UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA
ex rel. MATTHEW CHISHOLM,

        Plaintiff,

   v.

COLUMBIA UNIVERSITY IN THE CITY OF NEW
YORK and RESEARCH FOUNDATION
FOR MENTAL HYGIENE, INC.,

        Defendants.

18 CV _____

Filed under seal pursuant to
31 U.S.C. § 3730(b)(2)

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

## OVERVIEW

1.    This is a civil action by MATTHEW CHISHOLM ("RELATOR"), on his own behalf, and on behalf of the United States of America, against defendants COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK ("COLUMBIA UNIVERSITY" or "CU") and the RESEARCH FOUNDATION FOR MENTAL HYGIENE, INC. ("RFMH") under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA"), for treble damages, civil penalties, and other relief arising from COLUMBIA UNIVERSITY's and RFMH's improper claims for, and receipt and retention of, monetary payments from the United States.

2.    More specifically, from at least as early as 2009 through the present, COLUMBIA UNIVERSITY and RFMH have been improperly seeking, receiving and retaining excessive payments from the United States for faculty efforts in connection with Government-sponsored and funded medical research grants issued by the National Institutes of Health ("NIH").

3.      Under Government regulations relating to 'faculty effort' under research grants, recipients of grants must monitor and report the allocation of an investigator's time devoted to research, as opposed to teaching, administration, or other non-research-related activities. For obvious reasons, an investigator's time purportedly spent on research cannot exceed 100% of the investigator's total work time (referred to as "commitment overlap").

4.      Similarly, Government regulations prohibit the use of grant funds to cover expenses that are already paid by another source (such as a portion of a researcher's salary) (referred to as "budgetary overlap"). This furthers the obvious interest in preventing a grant recipient from receiving double compensation for the same task.

5.      As set forth herein, however, COLUMBIA UNIVERSITY and RFMH have falsely certified their compliance with the faculty effort regulations and submitted grant applications and post-award annual reports that failed to disclose efforts that far exceeded the 100% cap, both with respect to commitment and budgetary overlap.

6.      As a result of such overlap, COLUMBIA UNIVERSITY and RFMH have falsely and fraudulently sought, obtained and retained millions of dollars in Government grant overpayments, the precise amount of which will be determined at trial.

## PARTIES AND ENTITIES

7.      The United States, through the Department of Health and Human Services ("HHS"), is the real party-plaintiff in interest in this action. HHS's headquarters are located at 200 Independence Avenue S.W., Washington, D.C., 20201. HHS also maintains a Northeastern Field Office at 26 Federal Plaza, Room 41-122, New York, New York, 10278.

8.      Among other things, HHS provides grant funding for medical research by academic institutions of higher learning through NIH. NIH is the largest source of funding for

medical research in the world. Its principal office is located at 9000 Rockville Pike, Bethesda, Maryland, 20892. NIH is made up of 27 institutes and centers, each with a specific research agenda, often focusing on a particular disease or body system.

9. The NIH institutes and centers that awarded the grants to Defendants that are the subject of this action include at least the following: the National Institute of Mental Health, the National Institute on Drug Abuse and the National Institute on Aging.

10. RELATOR is a natural person who currently resides in the State of New York. At times relevant to this complaint, RELATOR is, or was, an employee of COLUMBIA UNIVERSITY.

11. COLUMBIA UNIVERSITY is a multi-campus, post-secondary academic institution for higher learning and research, headed by a president and governed by a board of trustees and university senate. Its principal administrative offices are located at 535 West 116th Street, New York, New York, 10027. COLUMBIA UNIVERSITY also maintains business offices located at 615 West 131st Street, New York, New York, 10027, where various administrative functions for Government-sponsored grants are performed.

12. COLUMBIA UNIVERSITY has a medical school, known as the Columbia University College of Physicians and Surgeons ("Medical School"). The Medical School is located at 630 West 168th Street, New York, New York, 10032. Within the Medical School is the Columbia University Department of Psychiatry (the "Psychiatry Department").

13. The RESEARCH FOUNDATION FOR MENTAL HYGIENE, INC. is a not-for-profit corporation organized under the laws of the State of New York. RFMH conducts programs in keeping with the research, prevention and treatment purposes and objectives of the New York State Office of Mental Health ("OMH"). Its corporate office is located at 150

Broadway, Suite 301, Menands, New York 12204.  RFMH also maintains a business office at 1051 Riverside Drive, New York, New York 10032.

14. Many faculty members of the Psychiatry Department are not only full time CU employees, but are also employed by RFMH and/or the State of New York ("NYS" or "State").

15. Some Psychiatry Department faculty members who are employed by NYS have some clinical or administrative responsibility at OMH's New York State Psychiatric Institute ("NYSPI").  Far more typically, however, such Psychiatry Department faculty members are on a NYS "research line." Research lines provide salary support for investigators to perform research on state time. Essentially, NYS is funding this research.

16. Many Psychiatry Investigators operate private practices, as well.

17. Among other things, many Psychiatry Department faculty members who conduct research ("Psychiatry Investigators") regularly apply for and receive NIH-funded medical research grant monies under either primary contracts with NIH or sub-contracts with other institutions that have contracted with NIH for medical research grants, including RFMH, as well as various other universities and higher educational institutions.

18. With minor exceptions, nearly all of the NIH-funded medical research that the Psychiatry Investigators conduct is, and has been, physically performed by them at one of two off-site locations that are owned and operated by NYSPI.  These two off-site locations are: (1) the Lawrence Kolb Research Laboratory, located at located at 722 West 168th Street/40 Haven Avenue, New York, New York, 10032; and (2) the New York State Psychiatric Institute Riverside Drive Building (also known as the Herbert Pardes Building), located at 1051 Riverside Drive New York, NY 10032.

## JURISDICTION AND VENUE

19. The court has subject matter jurisdiction over the FCA claims alleged in this complaint under 28 U.S.C. §§ 1331 (federal question) and 1345 (United States as plaintiff), as well as, 31 U.S.C. § 3732(a) (False Claims Act).

20. The court has personal jurisdiction over COLUMBIA UNIVERSITY and RFMH pursuant to 31 U.S.C. § 3732(a) because COLUMBIA UNIVERSITY and RFMH can be found, reside, or transact business in this district. Section 3732(a) further provides for service of process at any place within or outside the United States.

21. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because COLUMBIA UNIVERSITY and RFMH can be found, reside, and transact business in this district; an act proscribed by 31 U.S.C. § 3729 occurred within this district; and a substantial part of the events or omissions giving rise to the claims alleged in this complaint occurred in this district.

## FCA SUBJECT MATTER JURISDICTION

22. Upon information and belief, none of the subject matter or other jurisdictional bars set forth in the FCA is applicable to this action.

23. Upon information and belief, prior to any "public disclosure" (as defined by the FCA), RELATOR voluntarily disclosed to the United States Attorney's Office for the Southern District of New York the information on which the allegations or transactions in this complaint are based.

24. Through his employment at COLUMBIA UNIVERSITY, RELATOR is an "original source" of the information on which his allegations are based, within the meaning of the FCA.

## FCA DAMAGES, PENALTIES AND AWARDS FOR FALSE CLAIMS

25. The FCA imposes liability on any person violating § 3729(a)(1) to the United States Government as follows: a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104–410), plus three (3) times the amount of damages which the Government sustained because of the act of that person. 31 U.S.C. § 3729(a)(1).

26. Where the Government proceeds with an action commenced by the filing of a *qui tam* complaint and recovers money from a defendant under § 3729, the person who initiated the action (the "relator") may receive up to twenty-five percent (25%) of the proceeds. Where the Government does not proceed with such an action and the relator pursues it on his/her own and recovers proceeds from a defendant under § 3729, the relator may receive up to thirty percent (30%) of the proceeds. In either case, the relator is also entitled to an award against the defendant for the amount of all reasonable expenses, attorneys' fees and costs. 31 U.S.C. § 3730(d).

## RELEVANT FCA DEFINITIONS

27. For purposes of the FCA, "claim" means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(b)(2)(A).

28. For purposes of the FCA, "knowing" and "knowingly" means that a person, with respect to information: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b).

29. For purposes of the FCA, "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment. 31 U.S.C. § 3729(b)(3).

30. For purposes of the FCA, "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4).

## APPLICABLE REGULATIONS

31. The United States, through NIH, makes grants to universities and other institutions for the purpose of funding medical and other types of research projects. *See* 42 U.S.C. § 241(a)(3).

32. NIH awards such grants pursuant to various regulations it promulgates, including, among others, 42 U.S.C. § 241, 42 C.F.R. Part 52, the NIH Grants Policy Statement, and 42 C.F.R. § 52.8.

33. In addition to NIH-specific regulations, NIH grants are also awarded pursuant to general HHS regulations requiring that grant funds be expended solely in accordance with the approved grant application and budget, the terms and conditions of the award, and all applicable cost principles set forth in 45 C.F.R. Part 74, or, since December 26, 2014, 45 C.F.R. Part 75.

See also 42 C.F.R. Part 52, 42 C.F.R. § 52.6(a).  Specifically, grants for which a Notice of Award was issued prior to December 26, 2014 were subject to Circular A-21 (revised May 10, 2004) (as to grants issued to COLUMBIA UNIVERSITY) and Circular A-122 (revised May 10, 2004) (as to grants issued to RFMH), both issued by the United States Office of Management and Budget ("OMB"), and the Uniform Administrative Requirements for Awards and Subawards to Institutions of Higher Education, Hospitals, Other Nonprofit Organizations, and Commercial Organizations, set forth in 45 C.F.R. Part 74.  Grants for which a Notice of Award was issued on or after December 26, 2014 are subject to the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, set forth in 45 C.F.R. Part 75.

34. NIH regulations require that each university or other institution that applies for an NIH grant must submit an application in such form and manner as the Secretary of HHS may prescribe.  See 42 C.F.R. §§ 52.4, 52.6(c)(2).  The two most common forms used for NIH grant applications are PHS 398 and PHS 2590.

35. Applications for new research or extensions of existing research grants are deemed 'competing' applications; after an award is granted (typically for a five-year period), an applicant must submit a "non-competing grant progress report," generally on an annual basis for any second or subsequent budget period.  See NIH Grants Policy Statement, PHS 398, PHS 2590.

36. NIH grant applications are typically subjected to an initial peer review, after which NIH may request additional information in support of the application, commonly referred to as "Just-In-Time" information.  See NIH Grants Policy Statement, PHS 398, PHS 2590.

37. NIH regulations further require that each grant application (and each subsequent progress report) submitted by a university or other institution be signed by the Principal

Investigator (a/k/a "PI"), who is deemed the person "responsible for the scientific and technical direction of the project." 42 C.F.R. §§ 52.2, 52.4; see NIH Grants Policy Statement.

38. In addition, NIH regulations require that each grant application (and subsequent progress report) be signed and certified as true by an official acting on behalf of the applicant university or institution. Id. The applicant university or institution, as the recipient or grantee, is deemed the "responsible legal entity" with respect to any grants submitted by or on behalf of its Principal Investigators. 42 C.F.R. § 52.2.

39. Each grantee university or institution has a legal duty to exercise adequate oversight in connection with the federal grants awarded to it by the NIH. See 42 C.F.R. §§ 52.2, 52.6(a); 45 C.F.R. §§ 74.21, 74.51-74.53.

40. According to NIH guidelines, Principal Investigators and other Key Personnel (defined to include Co-Investigators) must disclose "other support," and subsequent changes in "other support," when requested to provide Just-In-Time information. See NIH Grants Policy Statement, PHS 398, PHS 2590. "Other support" includes all financial resources, whether Federal, non-Federal, commercial or institutional, available in direct support of an individual's research endeavors, including but not limited to, research grants, cooperative agreements, contracts and / or institutional awards. See NIH Grants Policy Statement, PHS 398, PHS 2590.

41. Information on "other support" assists the awarding agency in the identification and resolution of potential overlap of support. See NIH Grants Policy Statement, PHS 398, PHS 2590. Two forms of "overlap" relevant to this action are "commitment overlap" and "budgetary overlap." See NIH Grants Policy Statement, PHS 398, PHS 2590.

42. According to NIH guidelines, an investigator's commitment effort may not exceed 100% of his or her time. See NIH Grants Policy Statement, PHS 398, PHS 2590. When

it does, it is called "commitment overlap." According to NIH guidelines, "commitment overlap" occurs when the investigator's time commitment exceeds 100% of his or her time, whether or not salary support is requested in the application.

43. As part of the required disclosure on Forms PHS 398 and 2590 (or related electronic submissions), Key Personnel must disclose the percentage of their time that will be committed to the grant at issue. See NIH Grants Policy Statement, PHS 398, PHS 2590.

44. A related, but distinct, concept is "budgetary overlap." This occurs when an investigator's efforts are paid by both a grant and another source. For example, where an investigator is conducting research funded by a grant, the use of grant funds to cover expenses (such as the investigator's time) that are covered through another source (such as a NYS salary line) constitutes "budgetary overlap." See NIH Grants Policy Statement, PHS 398, PHS 2590.

## FACTUAL ALLEGATIONS

### General Factual Allegations

45. Since at least 2008, COLUMBIA UNIVERSITY's Department of Psychiatry has applied for, been awarded and has received approximately $20 million annually as a primary grantee for NIH-sponsored medical research grants.

46. Additionally, during this same time period, the Psychiatry Department has applied for, been awarded and has received approximately $10 million annually as a sub-contractor (or sub-grantee) for NIH-sponsored medical research grants that were awarded to other non-profit organizations (mainly, RFMH) and other higher educational institutions.

**Defendants' Failure to Accurately Disclose Psychiatry Investigators' Effort**

47. For many years, Psychiatry Investigators have submitted NIH grant applications that failed to disclose that their commitment effort, in fact, exceeded 100%, as described in more detail below.

48. As explained above, many Psychiatry Investigators are not only full time CU employees, but are also employed by RFMH and/or the NYS, and many also operate private practices.

49. Upon information and belief, prior to sometime in or about 2011, CU placed no limits on the amount of time a CU Psychiatry faculty member could spend in private practice, and CU made no effort to track private practice activity.

50. Upon information and belief, beginning in or about 2011, CU restricted Psychiatry faculty members to a maximum of 15 hour per week for outside private practice activity, and the members were required to sign an attestation that they did not exceed this limit.

51. Upon information and belief, several Psychiatry faculty members refused to sign their attestations.

52. The tracking of Psychiatry Investigators' effort through the three entities, RFMH, CU and NYS, is not coordinated. RFMH effort is tracked through the RFMH effort reporting process, and CU effort is reported through the CU effort reporting process. Psychiatry Investigators on the NYS payroll complete timesheets. These processes are completely separate from one another.

53. Upon information and belief, CU has never imposed a limit on the number of hours worked at CU, RFMH and/or NYS. Additionally, CU has never tried to monitor the

combined time Psychiatry Investigators expended working for these entities, as well as any hours spent on private practice activities.

54. Senior administrators within CU and RFMH are aware that if they were to monitor the commitment effort of Psychiatry Investigators for time spent at CU, RFMH, NYS and/or their private practices, a significant number would have commitment efforts exceeding 100% for NIH grant application purposes. In short, there simply are not enough hours in the week for some of this effort not to be performed concurrently.

55. Upon information and belief, certain Psychiatry Investigators who receive salary support on NIH grants submitted through RFMH, receive that amount in the form of an RFMH salary. Separately, they are on the NYS payroll as a Research Scientist or Research Psychiatrist. Upon information and belief, this NYS salary line is not reported to NIH as other support when these Psychiatry Investigators apply for NIH grants.

56. Upon information and belief, CU and RFMH regularly and knowingly submitted and certified "Just-In-Time" information to NIH, as part of the grant application process, with "other support pages" that failed to disclose the salaried NYS research positions of PIs and other Key Personnel on the grants.

57. As a result of CU's and RFMH's knowing submission of fraudulent or false applications and failure to fully disclose their Psychiatry Investigators' research commitments, NIH was not aware that these people were often committed to over 100% research effort. Likewise, NIH was not aware of the undisclosed budgetary overlap from the overlapping funding sources for the subject research.

**Specific Representative Examples**

58.   CU and RFMH submitted applications to obtain the following grants from NIH, some or all of which included knowingly and materially false statements and certifications as to, among other things, the compliance with the commitment overlap and budgetary overlap regulations set out above:

| Year | Investigator | NYS Research Position | Effort on NIH Grants (Institution) |
|---|---|---|---|
| 2009 | AA | Psychiatrist 2 Research (Full-Time) | K02DA026075   (Columbia) |
|  |  |  | R01DA022455   (Columbia) |
|  |  |  | R21DA023039   (RFMH) |
| 2010 | VA | Research Scientist 7 (Full-Time) | R01MH040210   (Columbia) |
|  |  |  | R01MH079439   (Columbia) |
|  |  |  | P50MH090966   (RFMH) |
|  |  |  | R01MH082041   (RFMH) |
|  |  |  | R01AA011293   (RFMH) |
| 2011 | RF | Research Scientist 7 (Full-Time) | K05DA031749   (Columbia) |
|  |  |  | R01DA004130   (RFMH) |
|  |  |  | R01DA021319   (RFMH) |
|  |  |  | R01DA029618   (RFMH) |
| 2012 | MK | Research Scientist 7 (Full-Time) | R01MH061399   (Columbia) |
|  |  |  | R01MH067068   (Columbia) |
|  |  |  | R13MH091947   (Columbia) |
|  |  |  | RC1MH088702   (Columbia) |

| Year | Initials | Title | Grant (Institution) |
|---|---|---|---|
| 2013 | DJ | Psychiatrist 3 Research (Full-Time) | P50MH086385  (Columbia) |
| | | | R21MH099265  (Columbia) |
| | | | R37MH049334  (RFMH) |
| | | | R01MH049334   (RFMH) |
| | | | R34MH100317  (Columbia) |
| 2014 | JM | Research Scientist 8 (Full-Time) | R01MH040695   (Columbia) |
| | | | P50MH090964    (RFMH) |
| | | | R01MH056390   (RFMH) |
| | | | R01MH082041   (RFMH) |
| | | | P01AG032959   (Columbia) |
| | | | R01MH040210  (RFMH) |
| | | | R01MH096784  (Columbia) |
| | | | R01MH093637   (Columbia) |
| 2015 | WF | Research Scientist 6 (Full-Time) | U01HD055155   (Columbia) |
| | | | R37HD032774   (RFMH) |
| 2016 | JJ | Psychiatrist 3 Research (Full-Time) | K05DA022413  (Columbia) |
| | | | U01DA042233  (RFMH) |
| | | | R01MH054137  (RFMH) |
| | | | R21MH112156  (RFMH) |
| | | | R01DA017293  (Columbia) |
| | | | R21DA035485  (Columbia) |

| | | | |
|---|---|---|---|
| | | | R01MH093672 (RFMH) |
| 2017 | GW | Research Scientist 6 (Full-Time) | U01DA036226 (Columbia) |
| | | | R01MH113599 (Columbia) |
| | | | R01DA043122 (RFMH) |
| | | | P42ES010349 (Columbia) |
| | | | R01DA027100 (Columbia) |

## COUNT I

### FCA VIOLATIONS
### (31 U.S.C. §§ 3729(a)(1)(A), (B), (C) and (G))

59. Relator realleges all the allegations in this complaint as if fully set forth herein.

60. This is a claim for treble damages and penalties under the FCA, as amended on May 20, 2009.

61. Through the acts described above and otherwise, COLUMBIA UNIVERSITY and RFMH, by and through their agents and employees: (i) knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval; (ii) knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim; (iii) conspired to commit a violation of the FCA; and, (iv) knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, all in violation of 31 U.S.C. §§ 3729(a)(1)(A), (B), (C) and (G).

62. Upon information and belief, the Government was unaware of the falsity of the records, statements, and claims made or submitted by COLUMBIA UNIVERSITY and RFMH.

15

63. Upon information and belief, the false and fraudulent representations and claims COLUMBIA UNIVERSITY and RFMH made to the Government were material to the Government's decisions to make payments to COLUMBIA UNIVERSITY and RFMH.

64. Upon information and belief, had the Government known of the false or fraudulent nature of COLUMBIA UNIVERSITY's and RFMH's representations and claims, it would not have made the payments to COLUMBIA UNIVERSITY and RFMH.

65. By reason of COLUMBIA UNIVERSITY's and RFMH's violations of the FCA, the United States has suffered economic loss.

## PRAYER FOR RELIEF

WHEREFOR, RELATOR, on behalf of himself, and on behalf and in the name of the United States, demands judgment against COLUMBIA UNIVERSITY and RFMH as follows:

A. Ordering COLUMBIA UNIVERSITY and RFMH to cease and desist from violating the FCA, 31 U.S.C. §§ 3729 *et seq*.

B. On Count I, a money judgment against COLUMBIA UNIVERSITY and RFMH in the amount of three times the damages the United States has sustained because of COLUMBIA UNIVERSITY's and RFMH's actions, plus a civil penalty of $11,000 for each act by COLUMBIA UNIVERSITY and RFMH in violation of the FCA, as provided by 31 U.S.C. § 3729(a).

C. Awarding RELATOR the maximum relator's share available under the FCA, for bringing Count I, namely, 25 percent of the proceeds of the action by judgment or settlement of the claim if the Government intervenes in the matter (or pursues its claim through any alternate remedy available to the Government, 31 U.S.C. § 3730(c)(5)), or, alternatively, 30 percent of the

proceeds of the action by judgment or settlement of the claim, if the Government declines to intervene, as provided in 31 U.S.C. § 3730(d).

    D.    Awarding RELATOR all reasonable expenses that were necessarily incurred in prosecuting this action, plus all reasonable attorneys' fees and costs, as provided by 31 U.S.C. § 3730(d) .

    E.    Interest on money judgments, as provided by law. And,

    F.    For such other relief for the United States and RELATOR as the Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, RELATOR hereby demands trial by jury.

Dated: New York, New York
       February 20, 2018

                            McINNIS LAW

                            By:  /s/Timothy J. McInnis
                            Timothy J. McInnis [7151]
                            521 Fifth Avenue, 17th Floor
                            New York, NY 10175
                            Tel:(212) 292-4573
                            Fax: (212) 292-4574
                            Email: tmcinnis@mcinnis-law.com
                            *Attorneys for Relator Matthew Chisholm*